UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FLORENCE C. JEFF, ET AL** | **CIVIL ACTION** |
| **versus** | **NO. 04-1507** |
| **UNIVERSAL HEALTH SERVICES, INC., ET AL** | **SECTION "C" (1)** |

## ORDER AND REASONS

Before the Court is Defendant Pendleton Memorial Methodist Hospital's ("Defendant" or "PMMH") Motion for Partial Summary Judgment (Rec. doc. 33) and Motion to Stay or to Close Administratively (Rec. doc. 24). Oral argument was heard on July 20, 2005, and the motions were taken under submission. For the foregoing reasons, the motions are DENIED.

I. Background

On May 30, 2003, at some time between 4:30 and 6:00 p.m., Morris Jeff visited the office of Dr. Michael Lavigne complaining of a persistent cough. Dr. Lavigne diagnosed bronchitis, gave Jeff a prescription for antibiotics, and ordered chest x-rays and lab work. Soon after his visit with Dr. Lavigne, Jeff continued to feel weak, short of breath, and was having difficulty walking. He went to the Pendleton Memorial Hospital Emergency Room again that evening where his request to see a doctor was allegedly refused; Jeff was allegedly told the wait would be several hours, and he was not seen by a triage nurse. At that point, Jeff allegedly had his prescription filled and

returned home.

The next morning, Jeff again went to the Emergency Room and saw Dr. George Howard, Dr. Lavigne's partner. Jeff was hospitalized and consultations were called with Dr. Janine Parker, a pulmologist, and Dr. Juan Escarfuller, a cardiologist. Jeff remained hospitalized for the next two days, June 1 and June 2, 2003, until he died.

Jeff's surviving wife and children (Plaintiffs) filed the instant claim against PMMH under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(d)(2)(A). Plaintiffs also indicate that they intend to bring a claim in state court for medical malpractice.

## II. EMTALA

EMTALA was enacted in 1986 in response to growing concern over the conduct of hospitals that were "dumping" patients by refusing to provide services with emergency medical conditions who were uninsured or unable to pay by transferring such persons (to a public hospital or back home) before their emergency condition was stabilized. *Spradlin v. Acadia-St. Landry Medical Foundation*, 758 So.2d 116, 121, 1998-1977 (La. 2/29/00). The statute provides that any individual who appears in the emergency department of a covered hospital and requests an examination or treatment must be provided an "appropriate medical screening examination." 42 U.S.C. § 1395dd(a). If the hospital determines that the individual has an "emergency medical condition," then it has the additional duty of providing further examination and treatment as may be required to stabilize the individual or to arrange an appropriate transfer. 42 U.S.C. § 1395dd(b).

With respect to damages, EMTALA provides that:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A).

III. Motion for Partial Summary Judgment

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Automobile Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53,

3

and Fed. R. Civ. P. 56(e)).  The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion.  *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Id.* at 249-50, 106 S. Ct. at 2511 (citations omitted).

PMMH seeks partial summary judgment on the question of whether possible damages in the instant EMTALA claim are limited by the Louisiana Medical Malpractice Act ("LMMA").  The LMMA states that:

> A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries or death of any one patient.

La. R.S. 40:1299.42(B)(2).  As a qualified health care provider, PMMH asserts that it is entitled to the limitations of the statute.  The Court disagrees.

La. R.S. 40:1299.42(B)(2) specifically covers malpractice claims only.  "Malpractice" under the statute means "any *unintentional tort* or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient."  La. R.S. 40:1299(A)(8) (emphasis added).

EMTALA, by contrast, provides a distinct cause of action.  *See McDougal v. LaFourche Hosp. Serv. Dist.*, 1993 185647 (E.D. La.) (EMTALA creates an independent federal cause of action based on a strict liability standard); *See also Spradlin*, 758 So.2d at 121 (La. 2/29/00) ("The courts have construed EMTALA as creating a federal cause of action separate and distinct from , and not duplicative of, state malpractice causes of action").  Rather than establish liability using traditional notions of negligence, an EMTALA action is "based on a strict liability standard.*"  Abercrombie*

*v. Osteopathic Hospital Founders Assoc.*, 950 F.2d 676, 681 (10th Cir. 1991).  It is "not analogous to a state medical malpractice claim because it creates liability for refusal to treat."  *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990).  Moreover, liability under EMTALA "does not incorporate a state's procedural limitations for malpractice actions.  *See Green v. Touro Infirmary,* No. 90-4860 (E.D. La. Feb. 1, 1991).

      Accordingly, the Court finds that Plaintiffs's EMTALA claim is not limited with respect to damages by the LMMA.

IV. <u>Motion to Stay</u>

      PMMH seeks a stay in the instant federal EMTALA.  A stay, PMMH argues, would promote judicial efficiency and prevent the possibility of awarding double damages to Plaintiffs.  If the case is stayed, PMMH argues, Plaintiffs would have the option of adding their EMTALA claim to the state court proceeding, thereby avoiding the need for two lawsuits, or Plaintiffs could pursue the EMTALA claim in federal court after the state court proceedings are completed, if they had not collected all of their damages in the state court proceeding.  If the case were stayed, Plaintiffs would also have the option of adding all the negligence claims to the EMTALA claim in federal court.  (Rec. doc. 24, p. 2).  In addition, PMMH argues that failure to stay the case could lead to *res judicata* problems down the road.

      As noted above, the EMTALA action and the medical malpractice claims are distinct causes of action.  Though it may be more efficient for the EMTALA claim and the state medical malpractice claim to be joined together in federal court, Plaintiffs are under no obligation to do so as the claims are distinct; some facts may overlap, but it is clear that an EMTALA claim is not

redundant of a medical malpractice claim. For this reason, the Court is not concerned with a future problem of claim preclusion. Moreover, PMMH has shown no case in which either a medical malpractice claim or EMTALA claim has been dismissed on the basis of *res judicata* for arising out of the same transaction as the other. For example, PMMH cites *Smith v. Howell Industries*, but it involved suits stemming from an instance of alleged wrongful discharge and race discrimination. 579 So.2d 1236 (La.App. 3d Cir. 1991). *Brister v. Parish of Jefferson* involved suits arising from an allegedly wrongful and discriminatory arrest. 747 F.2d 1019 (5th Cir. 1984).

V. Conclusion

In conclusion, PMMH's request for a stay of the EMTALA claim is not warranted. In addition, PMMH is not entitled to summary judgment on the issue of damages because Louisiana's medical malpractice statute does not limit the damages available in an EMTALA claim.

Accordingly,

**IT IS ORDERED** that Pendleton Memorial Methodist Hospital's Motion for Partial Summary Judgment (Rec. doc. 33) and Motion to Stay or to Close Administratively (Rec. doc. 24) are **DENIED**

New Orleans, Louisiana, this 27th day of July, 2005.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE